THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NHS HUMAN SERVICES, INC. | : | |
| | : | Civil Action No. 11-2074 |
| v. | : | |
| | : | |
| LOWER GWYNEDD TOWNSHIP, | : | |
| LOWER GWYNEDD TOWNSHIP | : | |
| ZONING HEARING BOARD, | : | |
| FRANCIS VITETTA, | : | |
| CARY LEVINSON, and | : | |
| DENNIS DALY | : | |

---

ORDER

AND NOW, this              day of                 , 2011, upon consideration

of Defendants, Lower Gwynedd Township, Lower Gwynedd Township Zoning Hearing Board,

Francis Vitetta, Cary Levinson and Dennis Daly's Motion to Dismiss Complaint Pursuant to

F.R.C.P. 12(b)(6) or alternatively, Motion for Summary Judgment Pursuant to F.R.C.P. 56(b)

and any response thereto, it is hereby

ORDERED

that the Motion is GRANTED.  Plaintiff's Compliant is dismissed with prejudice.

BY THE COURT:

_____
J.

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NHS HUMAN SERVICES, INC.                :
                                        :      Civil Action No. 11-2074
          v.                            :
                                        :
LOWER GWYNEDD TOWNSHIP,                  :
LOWER GWYNEDD TOWNSHIP                   :
ZONING HEARING BOARD,                    :
FRANCIS VITETTA,                         :
CARY LEVINSON, and                       :
DENNIS DALY                              :

DEFENDANTS, LOWER GWYNEDD TOWNSHIP, LOWER GWYNEDD TOWNSHIP
ZONING HEARING BOARD, FRANCIS VITETTA, CARY LEVINSON AND DENNIS
DALY'S MOTION TO DISMISS COMPLAINT
PURSUANT TO F.R.C.P. 12(b)(6) OR, ALTERNATIVELY,
MOTION FOR SUMMARY JUDGMENT PURSUANT TO F. R.C.P. 56(b)

Defendants, Lower Gwynedd Township, Lower Gwynedd Township Zoning Hearing

Board, Francis Vitetta, Cary Levinson and Dennis Daly, by their attorneys, Deasey, Mahoney,

Valentini & North, Ltd., herewith move this Honorable Court to dismiss Plaintiff's Complaint

(Exhibit "A") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim

upon which relief can be granted. and/or to enter summary judgment in favor of Defendants

pursuant to Federal Rule of Civil Procedure 56(b) for the reasons set forth in the attached

Memorandum of Law, which is incorporated herein by reference.

Respectfully submitted,

DEASEY, MAHONEY, VALENTINI & NORTH, LTD.

BY: ___HM1224_____
      HARRY G. MAHONEY, ESQUIRE
      Attorney I.D. No. 19609
      1601 Market Street
      Suite 3400
      Philadelphia, PA  19103

Telephone: (215) 587-9400
Fax: (215) 587-9456
245.24053

Attorneys for Defendants: Lower Gwynedd
Township, Lower Gwynedd Township Zoning
Hearing Board, Francis Vitetta, Cary Levinson and
Dennis Daly

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NHS HUMAN SERVICES, INC.   :
             :   Civil Action No. 11-2074
    v.       :
             :
LOWER GWYNEDD TOWNSHIP,  :
LOWER GWYNEDD TOWNSHIP   :
ZONING HEARING BOARD,    :
FRANCIS VITETTA,      :
CARY LEVINSON, and     :
DENNIS DALY       :

---

DEFENDANTS, LOWER GWYNEDD TOWNSHIP, LOWER GWYNEDD TOWNSHIP
ZONING HEARING BOARD, FRANCIS VITETTA, CARY LEVINSON AND DENNIS
DALY'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS COMPLAINT
PURSUANT TO F.R.C.P. 12(b)(6) AND/OR
MOTION FOR SUMMARY JUDGMENT PURSUANT TO F. R.C.P. 56(b)

I.  FACTS

  According to the Complaint, (Exhibit "A"), Plaintiff NHS Human Services, Inc.
(hereinafter "NHS") is a Pennsylvania non-profit corporation which provides residential services
for individuals with intellectual development disabilities (IDD).  The Complaint further alleges
that NHS, through a subsidiary, Allegheny Valley School (hereinafter "AVS"), purchased a
property at 761 Tennis Avenue in Lower Gwynedd Township in which it proposes to place four
adult individuals who suffer from IDD, and a full time caregiver.

  The Defendants include Lower Gwynedd Township which is a municipality located in
Montgomery County, Pennsylvania, the Township's Zoning Hearing Board and the three
members of the Zoning Hearing Board (hereinafter "ZHB"), Francis Vitetta, Cary Levinson and
Dennis Daly.

The property which Plaintiff purchased on Tennis Avenue is located in an A-Residential Zoning District pursuant to the Township's Zoning Ordinance and Zoning Map.

On March 29, 2010 NHS filed a request for a special exception to the ZHB.  A true and correct copy of the request for special exception is attached hereto as Exhibit "B".  Plaintiff asked for the following specific relief in section 6a of the application to the ZHB:

> Applicant seeks a Special Exception pursuant to Section 1250.04(a)(27) to permit a "family" as defined under the aforesaid Section to be located, as a Permitted Use, in the A-Residential Zoning District in accordance with Section 1257.02(a)(2).

The referenced Sections of the Zoning Ordinance, Sections 1250.04(a)(27) and 1257.02(a)(2) are attached hereto collectively as Exhibit "C".  The application to the ZHB did not challenge the Township's Zoning Ordinance or the specific sections noted above on the basis that they were unconstitutional or in violation of any federal statute.  In addition, Plaintiff's application did not seek a variance from the provisions of the Zoning Ordinance.

The ZHB commenced hearings on the Plaintiff's application for a special exception on May 13, 2010.  Additional hearings were held on June 14 and September 9, 2010.  True and correct copies of the transcripts of the proceedings before the Zoning Hearing Board are attached hereto collectively as Exhibit "D".

On November 11, 2010, the ZHB issued its Decision and Order, including findings of fact and conclusions of law. ( A true and correct copy of the ZHB Decision and Order is attached hereto as Exhibit "E").  The ZHB denied Plaintiff's application in its entirety.  In its detailed discussion and analysis, the ZHB made three principal findings:

1.      The proposed use of the property was a business/commercial use and not a "family" as set forth in the Zoning Ordinance;

-2-

2.      The proposed use did not meet the definition of "family" as set forth in the Ordinance; and

3.      The proposed use did not meet the criteria set forth in the Ordinance for the approval of a special exception for a family use.

In addition, the ZHB correctly pointed out that Plaintiff's application did not challenge the Zoning Ordinance on the basis that it was unconstitutional or in violation of any federal statutes. Specifically, the application did not list, as a grounds for the grant of the special exception, the Fair Housing Act, the Fair Housing Amendments Act, the Americans with Disabilities Act, or the Rehabilitation Act. The application further did not challenge the Ordinance on the basis that its application violated Equal Protection under the U.S. Constitution or the Pennsylvania Constitution.

As a result of the Zoning Hearing Board's decision, Plaintiff has filed the instant civil rights action against the Township, the Zoning Hearing Board and its three members. The Complaint (Exhibit "A") states five separate counts. They include the following:

First Count      -      violation of the Fair Housing Act;

Second Count -      violation of the Americans with Disabilities Act;

Third Count    -      violation of the Rehabilitation Act;

Fourth and      -      denial of equal protection of law under the U.S. Constitution and
Fifth Counts          the Pennsylvania Constitution.

For the reasons set forth below, the Complaint should be dismissed.

II.     STANDARD FOR A MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) AND A
        MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56(b)

        A.      Standard of Review Pursuant to F.R.C.P. 12(b)(6)

        Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2).  Although

this pleading standard does not require "detailed factual allegations, ... it demands more than an

unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, __ U.S. __, 129

S. Ct. 1937, 1949, 139 L.Ed.2d 868 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  A complaint that offers nothing more than

"'labels and conclusions[,] ... a formulaic recitation of the elements of a cause of action ... [or]

naked assertion[s]' devoid of 'further factual enhancement'" does not meet this standard and

should be dismissed.  Iqbal, 129 S. Ct. at 1949, citing Twombly, 550 U.S. at 557.  Thus, to

survive a Motion to Dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." Twombly, 550

U.S. at 556 (retiring the "no set of facts" test of Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L.

Ed. 2d 80 (1957)).

        Under the Twombly/Iqbal paradigm, a Court must engage in a two-step inquiry to

determine the sufficiency of the factual matter alleged.  First, the Court must identify and

disregard allegations that are nothing more than legal conclusions and, therefore, "not entitled to

the assumption of truth." Iqbal, 129 S. Ct. at 1950.  Indeed, as both Twombly and Iqbal made

clear, a Court need not consider allegations in the Complaint that constitute unsupported legal

conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations

devoid of any reference to actual events.  See Twombly, 550 U.S. at 556 (explaining that "on a

motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"), quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); Bright v. Westmoreland County, 380 F.3d 729, 735 (3rd Cir. 2004) ("In ruling on a Rule 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations."). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.

The Court then must identify the non-conclusory, well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 1950. If the factual allegations, assumed to be true, are consistent with a claim for relief, that claim must nevertheless be dismissed if the facts are equally consistent with a finding of no liability. See Id.

Applying this two-step inquiry, the Supreme Court in Iqbal considered a Bivens claim brought by a federal detainee against John Ashcroft, the former Attorney General, and Robert Mueller, the Director of the Federal Bureau of Investigations, for alleged constitutional injuries he suffered while in federal custody. See Id. at 1942. Both Defendants moved to dismiss Iqbal's claim on the basis of qualified immunity. See Id. Noting that Bivens claims are the "federal analog to suits brought against state officials under Rev. Stat. § 1979, 42. U.S.C. § 1983," the Court applied § 1983 precedent to determine whether Iqbal had pled sufficient facts to hold Ashcroft and Mueller personally liable for his alleged constitutional injuries. Id. at 1948 (internal quotation omitted). The Court held that he did not. See Id. at 1954.

In so holding, the Court found that Iqbal's allegations that the defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy'" and that Ashcroft "was the 'principal architect' of this invidious policy . . . [and] Mueller was 'instrumental' in adopting and executing it" were exactly the type of conclusory allegations that a court should disregard when considering a motion to dismiss. Id. at 1951. The Court characterized Iqbal's allegations against Ashcroft and Mueller as "'a formulaic recitation of the elements' of a constitutional discrimination claim." Id., quoting Twombly, 550 U.S. at 555.

In addition, the Court need not "credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion School District, 132 F.3d 902, 906 (3rd Cir. 1997). In ruling on a 12(b)(6) motion, Courts consistently reject "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," and "legal conclusions cast in the form of actual allegations." Id. at 906, n. 8. A Court is not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations. Baraka v. McGreevy, 481 F. 3d 187, 211 (3rd Cir. 2007). Because Plaintiff's claims against Moving Defendants, as set forth in the Complaint, fail to meet the pleading standard established by the Supreme Court, such claims should be dismissed with prejudice.

B.    Conversion of a Motion to Dismiss Into a Motion for Summary Judgment

If, in a F.R.C.P. 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all

material made pertinent to such a motion by Rule 56". F.R.C.P. 12(b). Accordingly, a court converting a motion to dismiss into a motion for summary judgment must normally give notice to the parties of its intention to do so. <u>Rose v. Bartle</u>, 871 F.2d 331, 342 (3d Cir. 1989). When, however, a motion to dismiss is framed in the alternative as a motion for summary judgment, conversion is appropriate without additional notice. <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 579 (3d Cir. 1996).

      C.     <u>Standard for Deciding a Motion for Summary Judgment</u>

In deciding a motion for summary judgment pursuant to F.R.C.P. 56, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." <u>Medical Protective Company v. Watkins</u>, 198 F.3d 100, 103 (3d Cir. 1999) (quoting <u>Armbruster v. Unisys corp.</u>, 32 F.3d 768, 777 (3d Cir. 1994)). "summary judgment will not lie if the dispute about a material fact is 'genuine', that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). The court must examine the evidence in the light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. <u>Matsushita Elec. Indus co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

III.    <u>ARGUMENT</u>

      A.     Plaintiff's Complaint Fails to State a Cause of Action for Which
           <u>Relief Can Be Granted</u>

The gravamen of Plaintiff's Complaint is that the Township and its ZHB are somehow violating the Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act and the equal protection rights of the Plaintiff because of the ZHB's decision not to grant a special exception to the Plaintiff. More specifically, the Plaintiff claims that the ZHB was obligated to

determine that the proposed group of 4 individuals with IDD and a residential caregiver should be interpreted as a "family". The law in the Third Circuit does not support that contention. In Wagner v. Harmar, 651 F.Supp. 1286 (W.D., Pa. 1987) (affirmed without opinion, 826 F.2d 1058 (3d Cir. 1987)), the district court granted a defendant municipality's motion to dismiss an action brought by a plaintiff pursuant to, among other claims, 42 U.S.C. §1983. There, the plaintiff had successfully secured a zoning variance from a township zoning board and the township appealed that decision. In fact, the township appealed the case twice to the Court of Common Pleas of Allegheny County, which found in favor of the plaintiff-applicant on both appeals, affirming the grant of a variance.

In Wagner, the plaintiff alleged discriminatory treatment in the original denial of his application for a building permit, claiming that the township had, for a period of four years, not strictly enforced the ordinance which was the basis of the denial of plaintiff's application. The Court held that a rigorous enforcement policy by the township and the taking of appeals from the grant of a variance failed to state a cause of action for deprivation of plaintiff's rights.

In Wagner, supra, the plaintiff alleged discriminatory enforcement of zoning provisions by the township, which forced plaintiff to seek a variance in the first place. In the case at bar, NHS did not take an appeal from an adverse determination by the Township's Zoning Officer. Rather, it applied, on its own, for a special exception. Inherent in that action is Plaintiff's acknowledgment that it needed to fit within the definition of "family" as set forth in the Zoning Ordinances. Section 1250.04(a)(27) specifically excludes the following from the definition of "family": "occupants of a . . . assisted living facility, life-care facility or the like". The witnesses and evidence presented by the Plaintiff clearly demonstrated that the very extensive

-8-

nature of the services provided by one full-time resident caregiver, five other aides who would work, in shifts, 24 hours per day, seven days per week and the attendance of nurses, supervisors and others from NHS to oversee the operation, make the proposed use an assisted living facility or a life-care facility.  Indeed, Plaintiff's principal witness, Regis Champ, described the proposed facility as an "Intermediate Care Facility for Mentally Retarded Persons" (ICF/MR), which the ZHB found to be akin to an assisted care facility.  (Exhibit "E", pp. 10, 11, 12).  Therefore, the proposed facility was essentially a business or commercial use, which is not permitted in an A-Residential zone.

Plaintiff's Complaint, when distilled to its essence, is nothing more than a criticism of the decision of the Township's Zoning Hearing Board and, by implication, criticism of the ZHB for defending itself on the appeal of the zoning decision to the Court of Common Pleas of Montgomery County.  The Pennsylvania Municipalities Planning Code provides for a party to a zoning hearing decision to take an appeal to the Common Pleas Court in the County in which the property is located in the event of an adverse decision.  72 P.S. §11001-A et seq.  That necessarily involves another party to defend the appeal.  The Municipalities Planning Code also provides that the Court of Common Pleas may set aside or modify any decision of a zoning hearing board.  72 P.S. §11006-A.  The standard of review is whether the ZHB committed a manifest abuse of discretion or error of law.  In re Brandywine Realty Trust, 857 A.2d 714 (Cmwlth. 2004), reargument denied.

At this point, the state land use appeal has not been decided so it is unknown whether a state court will find any abuse of discretion or error of law by the ZHB in its decision.  Defendants contend that there was no abuse of discretion or error of law in the ZHB decision.

Indeed, in its detailed analysis, the ZHB explained the Plaintiff's failure to establish either the general criteria for the grant of a special exception or the specific criteria for the requested special exception in this case. (Exhibit "E", pp. 16, 17, 18, 19). On this basis alone, the Complaint fails to state a cause of action for which relief can be granted and should be dismissed pursuant to F.R.C.P. 12(b)(6).

      B.    <u>First Count - Fair Housing Act</u>

The Complaint alleges that the ZHB decision denying Plaintiff's application for a special exception and for an interpretation of the definition of "Family" is a failure to make a reasonable accommodation to facilitate housing for individuals with disabilities. The Fair Housing Amendments Act, 42 U.S.C. §3604(f) provides as follows:

      It shall be unlawful - -

      (f)

      (1)      To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of –

      (A)      that buyer or renter,

      (B)      A person residing in or intending to reside in that dwelling after it is so sold or made available

              * * * * * *

      (3)      For purposes of this subsection, discrimination includes –

              * * * * * *

(B)     A refusal to make reasonable accommodations in rules, policies, practices

or services, when such accommodations may be necessary to afford such

person equal opportunity to use and enjoy a dwelling.

42 U.S.C. §3604.  The Third Circuit has held that this language requires local land use boards to

make "reasonable accommodations in rules, policies [and] practices" when reviewing proposals

for housing for the handicapped.  <u>Lapid-Laurel, Inc. et al. v. Zoning Board of Adjustment of the</u>

<u>Township of Scotch Plains</u>, 284 F.3d 422 (3d Cir. 2002).

By submitting its application to the Zoning Hearing Board, the Plaintiff tacitly

acknowledged that its plan for a group home was not a by-right plan.  In fact, the Plaintiff

requested a special exception to locate it in an A-Residential zoning district by interpreting the

group proposed to live in the home as a "family".  A literal reading of the applicable section of

the Zoning Ordinance and the application before the ZHB shows that the only relief that could be

granted is a special exception.  In <u>Lapid-Laurel</u>, supra, the U.S. Court of Appeals for the Third

Circuit affirmed its longstanding position that "land use decisions are quintessentially local in

nature".  <u>Id</u>., at 451, citing <u>FERC v. Mississippi</u>, 456 U.S. 742, 768 n.30, 102 S.Ct. 2126, 72

L.Ed.2d 532 (1982) ("[r]egulation of land use is perhaps the quintessential state activity.");

<u>Village of Belle Terre v. Boraas</u>, 416 U.S.1, 13, 94 S.Ct. 1536, 39 L.Ed. 797 (1974) (Marshall,

J., dissenting) (noting that zoning "may indeed be the most essential function performed by local

government").  The Third Circuit went on to state that "we too have recognized in similar

contexts the value of local authorities resolving such matters on their own without interference

from the federal courts."  <u>Lapid-Laurel</u>, supra. at 451 citing <u>Acierno v. Mitchell</u>, 6 F.3d 970 (3d

Cir. 1993) ("stating that courts should not insert themselves in 'delicate area[s]' subject to local

regulation until local authorities have 'had the opportunity to apply authoritatively' their specific regulations)". In Lapid-Laurel, a developer of a proposed 95 bed facility for the elderly filed an action in federal district court against a Zoning Board of Adjustment and a Township for allegedly failing to "make reasonable accommodations" in order to facilitate housing for the elderly handicapped in violation of the Fair Housing Amendments Act. 42 U.S.C. §3604(f)(3)(B). The developer sought a use variance to locate the facility in a district which did not permit the use by right. It also sought variances from the zoning ordinance to (1) construct a parking lot in front of the building, (2) build a fence in excess of four feet in height and (3) place a freestanding sign in front of the building. In its decision denying the developer's request for variances, the Board of Adjustment cited the following concerns as reasons for the denial: (1) a negative impact on the municipal zoning plan (i.e., citing a commercial use in the R-1 zone); (2) traffic safety concerns, (3) a substantial portion of the site contained wetlands; and (4) insufficient access for emergency and fire vehicles.

While the Third Circuit went through a painstaking analysis of burden shifting among the parties in a "reasonable accommodations" case, it concluded that with respect to the Township's concern about limited safety vehicle access, the developer's site plan would impose the "undue hardship" on the township of compromising the safety of its residents.

The ZHB, in its decision (Exhibit "E"), found that the proposed use of the property was a business and a commercial use and not a "family" as set forth in the Ordinance. As stated before, the Plaintiff's principal witness, Regis Champ, admitted that the proposed use of the single family home for the group of individuals with disabilities was an ICF/MR requiring a full-time caregiver and round the clock aides who would provide assistance to the residents with

-12-

bathing, feeding, hygiene and other life care matters.  In addition, Mr. Champ provided

testimony that nurses and other supervisors would come to the facility on a regular basis to

administer to the residents' medical needs and to oversee the facility's operation.  Indeed, the

services to be provided are more akin to an assisted living facility or a nursing home, which are

specifically excluded in an "A-Residential" District.

In addition, the ZHB found that evidence about increased traffic from the facility would

negatively impact public health and safety.  (Exhibit "E", p. 18).  Therefore, as in Lapid-Laurel,

the ZHB had a valid basis for denying the "reasonable accommodation" of a special exception

because of the negative impact on public health and safety.

C.       Second and Third Counts - Americans with Disabilities Act;
          Rehabilitation Act

Plaintiff has asserted claims for alleged violation of the Americans with Disabilities Act,

42 U.S.C. §12101, et seq. and the Rehabilitation Act, 29 U.S.C. §794a.  In cases of this type in

which claims under the FHA, ADA and the Rehabilitation Act are made, courts have held that

the FHA analysis applies equally to the other claims.  Dr. Gertrude A. Barber Center, Inc. v.

Peters Tp., 273 F.Supp.2d 643 (W.D. Pa. 2003).

In light of the foregoing, Defendants incorporate their arguments from the preceding

section dealing with Plaintiff's claim under the FHA and respectfully suggest that for the same

reasons as articulated there, Plaintiff's claims under the ADA and Rehabilitation Act should be

dismissed.

D.     Fourth and Fifth Counts - Equal Protection

     1.     This Court Should Dismiss Plaintiff's Equal
Protection Claim Because Plaintiff Cannot
Demonstrate That They are (a) Similarly Situated
To Other Properties Treated Differently And That
(b) There Was No Rational Basis For The
Difference In The Treatment

In Counts IV and V of the Complaint, Plaintiff alleges violations of its equal protection

rights. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall

"deny to any person within its jurisdiction the equal protection of the laws." The Equal

Protection Clause "is essentially a direction that all persons similarly situated be treated alike."

Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). The Pennsylvania

Constitution provides similar equal protection rights.

Plaintiff must still establish (1) that they were treated differently than similarly situated

property owners, and (2) there was no rational basis for the difference in treatment. "[C]ourts are

quite reluctant to overturn governmental action on the ground that it denies equal protection of

the laws. The Constitution presumes that absent some reason to infer antipathy, even

improvident decisions will eventually be rectified by the democratic process and that judicial

intervention is generally unwarranted". Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59

L.Ed.2d 171 (1979).

Land use law is one of the last bastions of local control, largely free of federal

intervention. See Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 135 (3d Cir. 2002);

Solid Waste Authority v. United States Army Corps. Of Engineers, 531 U.S. 159, 174 (2001).

Where zoning legislation is subjected to substantive due process attack, the scope of review by

the federal court is also the most lenient standard in constitutional law: rationality review.   This

may be discerned from a statement by the Supreme Court of the United States:

> The power of local governments to zone and control land use is
> undoubtedly broad and its proper exercise is an essential aspect of
> achieving a satisfactory quality of life in both urban and rural
> communities. But the zoning power is not infinite and
> unchallengeable; it 'must be exercised within constitutional limits.'
> ... Accordingly, it is subject to judicial review; and as is most often
> the case, the standard of review is determined by the nature of the
> right assertedly threatened or violated rather than by the power
> being exercised or the specific limitation imposed....Where
> property interests are adversely affected by zoning, the courts
> generally have emphasized the breadth of municipal power to
> control land use and have sustained the regulation if it is rationally
> related to legitimate state concerns and does not deprive the owner
> of economically viable use of his property.

Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671

(1981) (emphasis added).

The Supreme Court also noted the following, which recently was relied upon by a district

court in this Circuit:

> Courts are reluctant to overturn governmental action on the ground
> that it denies equal protection of the laws.  The Constitution
> presumes that *absent some reason to infer antipathy,* even
> improvident decisions will eventually be rectified by the
> democratic process and that the judicial intervention is generally
> unwarranted.

American Fabricare v. Township of Falls, 101 F. Supp. 2d 301, 306 (E.D. Pa. 2000) citing Vance

v. Bradley, 440 U.S. 93, 97 (1979) (emphasis added).  See also 701 Pharmacy Corp. v. Perales,

930 F.2d 163, 169 (2d Cir. 1991); New York City Friends of Ferrets v. City of New York, 876 F.

Supp. 529, 533 (S.D.N.Y. 1995); Presnick v. Berger, 837 F. Supp. 475, 478 (D. Conn. 1993);

Decker v. Hope, 741 F. Supp. 1223, 1228 (E.D. Va. 1990).

-15-

In Cleburne, *supra* the Cleburne Living Center alleged that a zoning ordinance that did not permit mentally retarded individuals to live in an R-3 residential district was invalid on its face and as applied because it discriminated against mentally retarded persons. The City of Cleburne's zoning ordinance permitted apartment houses, multiple dwellings, boarding houses, lodging houses, fraternity and sorority houses, dormitories, apartment hotels, hospitals, sanitariums, nursing homes, or homes for convalescents, other than for the insane or feeble-minded. Id. at 437.[1] The Cleburne Living Center was denied its request to operate a group home for the mentally retarded in an R-3 district. The Court found it unconstitutional as applied.

Equal protection analysis rests on the principle that similarly situated entities should be treated similarly. *Laurence H. Tribe, American Constitutional Law* '-21, at 1515 (2d ed. 1988). In Cleburne, the court made two crucial findings. First, the proposed use was similarly situated to the allowed uses pursuant to the zoning ordinance. Cleburne, 473 U.S. at 447-50. Second, the reason behind the differential treatment was invidious discrimination. Id. at 450, 461. See also Midnight Sessions, *supra* at 683; Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir.), cert. denied, 488 U.S. 851 (1988); Pace Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023, 1035-36 (3d Cir.), cert. denied, 482 U.S. 906 (1987). **The Court reasoned that "if the potential residents of the Featherston Street home were not mentally retarded, but the home was the same in all other respects, its use would be permitted under the city's zoning ordinance."** Id. at 437 (emphasis added).

In Cleburne, *supra*, which involved a specific **exclusion** of mentally retarded housing in a residential district, there was no question that the decision by the city of Cleburne to bring

---

[1] The City of Cleburne ordinance's offending restriction was contained in the permitted use section for an R-3 district: "6. Hospitals, sanitariums, nursing homes or homes for convalescents or aged, other than for the insane or feeble-minded or alcoholics or drug addicts".

-16-

together a particular land use – various group homes – under a single zoning category was

constitutional. Rather, Cleburne focused on the question whether within that category of use, it

was rational to exclude homes with **identical effects** solely based on the identity of the

occupants, who were mentally retarded. Id. at 447-50.   In the instant case, Plaintiff cannot

make such a "similarly situated" analogy as the plaintiffs were able to do in Cleburne.

The determinative factor in Cleburne was the court's identification of irrational animus

against the mentally retarded by the city.  Such invidious discrimination plays no role in this

case.  The Township permits nursing homes and similar facilities in various districts (MF-3

Multi-Family Residential, MF-3A, MF-3B and D-Business Districts).  There is no specific

exclusion in the zoning ordinance for group homes, assisted living facilities or life-care facilities

for mentally-handicapped or retarded individuals.

<blockquote>
a.      Plaintiff's Land Is Not Similarly Situated To Other Parcels In
        Lower Gwynedd Township
</blockquote>

<blockquote>
If disgruntled permit applicants could create constitutional claims
merely by alleging that they were treated differently from a
similarly situated applicant, the correctness of virtually any state
permit denial would become subject to litigation in federal court.
Limiting such claims is essential to prevent federal courts from
turning into "zoning boards[s] of appeals." Village of Belle Terre
v. Boraas, 416 U.S. 1, 12, 94 S.Ct. 1536, 1542, 39 L.Ed.2d 797
(1974) (Marshall, J., dissenting).
</blockquote>

"Similarly situated" means similar "in all relevant respects." Singh v. Wal-Mart Stores,

Inc., 1999 U.S. Dist. LEXIS 8531 (E.D. Pa. 1999) citing Kline v. Kansas City, Mo., Fire Dept.,

1999 U.S. App. LEXIS 8500, 175 F.3d 660, 1999 WL 270013, (8th Cir. 1999). See also

Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (plaintiff must

show he was "similar in all of the relevant aspects" to persons allegedly receiving preferential

treatment); Holifield v. Reno, 115 F.3d 1555, 1563 (11th Cir. 1997) ("in all aspects"); Shumway v. United Parcel Service, 118 F.3d 60, 64 (2d Cir. 1997) ("similarly situated in all material respects"); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989) ("in all relevant aspects"); Dill v. Runyon, 1997 U.S. Dist. LEXIS 4355, 1997 WL 164275, *4 (E.D. Pa. Apr. 3, 1997) (plaintiff must demonstrate preferential treatment of persons "similarly situated in all material respects" to plaintiff).  It is simply not enough for a plaintiff to draw conclusory allegations at face value in this area of law with regard to similarly situated entities.  Vito v. Bray, 1991 U.S. Dist. LEXIS 13564 (E.D. Pa., Sept. 27, 1991) at *19.

For example, in Bell v. Tere Duperrault, 2004 U.S. Dist. LEXIS 9296 (7th Cir. May 12, 2004), the Court determined that plaintiff, a land developer, was not similarly situated to other developers whose permit requests were granted because the actual permit proposals were different; the timing of the respective applications was different; and the plaintiff sought to build a new structure whereas the alleged similarly situated developers were only adding on to existing structures.  Id. at * 9.

In land use planning cases, it may be very difficult to show unequal application of a zoning ordinance since each parcel can be unique. Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1240 (9th Cir.), *cert. denied*, 130 L. Ed. 2d 125, 115 S. Ct. 193 (1994).  For example, in The Development Group, LLC, et al. v. Franklin Township Board of Supervisors, et al., 2003 U.S. Dist. LEXIS 18042 (E.D. Pa. September 24, 2003), this Court addressed the equal protection requirements of "similarly situated" and "no rational basis for the difference in treatment" in a Rule 12 motion to dismiss.  Plaintiff, The Development Group, owned a parcel of land in Franklin Township, known as Miller Farm, which was zoned for high density residential

-18-

development ("HDR"). This zoning permitted, by right, a maximum of five residential units per acre. Any development at lesser density would, under the Township's zoning ordinance, be deemed a "conditional use," and would require the approval of the Board of Supervisors following a conditional use hearing . Id. at 6.

In The Development Group case, representatives of the plaintiff developer  presented a sketch plan to the Planning Authorities (Planning Commission and Board of Supervisors) at a joint public meeting. The sketch plan outlined a proposed development for the first of two phases of the development, involving the construction of approximately 54 single family residences. Id. at *8. At the meeting, defendants pointed out that the HDR zoning of the Miller Farm I property prohibited single-family homes, whereas townhouses would be permitted under the applicable ordinances.  However, according to the Complaint, members of the Planning Authorities who were present at the meeting also told Plaintiff that they were opposed to development of any kind on the property and that they would never approve a development plan for the land, irrespective of whether it conformed with the applicable ordinances.  Id.

Based on Defendants' comment that townhouses would be a use permitted by the relevant ordinances, Plaintiff undertook to prepare and present land development plans for a townhouse development which presumably was a by-right use under the HDR zoning. Following submission of the plans, the Plaintiff was subject to a review process that they contended was lengthier, much harsher and more onerous than other developers experienced. The Board of Supervisors eventually denied the plans, citing numerous deficiencies and non-compliances with the township's ordinances. Plaintiff contended that these reasons cited for denial in a letter to the Plaintiff were "spurious and pretextual, and provided an inappropriate and

-19-

insufficient basis for denial of preliminary plans." Id., at *10. The Board of Supervisors subsequently denied plans for the second phase of the property, also detailing its reasons in a letter to the Plaintiff.

Plaintiff alleged that the Township violated Plaintiff's equal protection rights because the Township had approved plans for tracts "similarly situated" to Plaintiff's property. Specifically, Plaintiff referred to a development known as Hess Mill Run II which was granted a waiver concerning permissible lengths of cul-de-sacs and the number of units permissible on cul-de-sacs, while Plaintiff were denied such a waiver. Id. at *20. Also, the Complaint alleged that Hess Mill Run II was approved even though sewer planning modules had not yet been submitted to the state, whereas the Miller Farm sewer planning modules had been approved by the Township and submitted to the state. Plaintiff also referred to another property called Echo Hill that they claimed was similarly situated without providing any detail to substantiate the claim.

This Court stated that other than these "*generalized allegations*", Plaintiff provide[d] no detail to support their contention that Hess Mill Run II and Echo Hill were similarly situated to Miller Farm. In order to demonstrate that these proposed developments were, in fact, similarly situated to Plaintiff's developments, the Court stated the Plaintiff would have to provide much more detail about Hess Mill Run II and Echo Hill." Id. at *22. The Court also noted that the complaint did not contain factual charges which, if proven, would show the absence of any rational basis for the Township's actions.

The general allegations in Counts IV and V do not satisfy the more stringent pleading requirements of Iqbal, supra and Twombly, supra. Plaintiff's allegations in Counts IV and V are

clearly nothing more than legal conclusions and should be disregarded by the Court.  On that basis alone, Counts IV and V should be dismissed.

        b.    Plaintiff cannot meet its burden of establishing the absence
             of any rational basis for the Township's actions

Assuming *arguendo* that Plaintiff establishes a genuine issue of material fact to satisfy prong one, Plaintiff must still satisfy the second prong of the equal protection analysis to overcome Defendants' Motion to Dismiss. See Barnes Foundation v. Township of Lower Merion, 982 F. Supp. 970, 986 (E.D. Pa. 1997) ("proof of racially disproportionate impact . . . would not be enough, standing alone, to support the inference of purposeful discrimination because the Defendant's actions are explainable on grounds other than race"); See also Crowley v. Courville, 76 F.3d 47, 53 (2d Cir. 1996)("a demonstration of different treatment from persons similarly situated, without more, would not establish malice or bad faith").

"Equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. ***In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.***" F.C.C. v. Beach Communications, Inc., U.S., 113 S. Ct. 2096, 2101, 124 L. Ed. 2d 211 (1993) (emphasis added). "Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." Id. ***Thus, "a state 'has no obligation to produce evidence to sustain the rationality of a statutory classification'" because "the burden is on the challenger***

*to disprove every conceivable basis which might support the classification, 'whether or not the basis has a foundation in the record.'* Panama City Medical Diagnostic Ltd., 13 F.3d at 1547, quoting Heller v. Doe by Doe, 113 S. Ct. 2637, 2643 (1993) (emphasis added). Unquestionably, Plaintiff has failed to meet this burden.

The Third Circuit recently affirmed summary judgment on an equal protection and substantive due process claim in the context of a land use/zoning dispute. As the district court noted:

> the "irrational and wholly arbitrary" standard is doubtless difficult for a plaintiff to meet in a zoning dispute, and we do not view an equal protection claim as a device to dilute the stringent requirements needed to show a substantive due process violation. It may be very unlikely that a claim that fails the substantive due process test will survive under an equal protection approach.

Highway Materials, Inc. v. Whitemarsh Township, 2004 U.S. Dist. LEXIS (E.D. Pa., October 4, 2004), affirmed, 386 Fed.Appx. 251 (3d Cir. 2010).

"The *equal protection clause* affords the states particularly wide latitude with respect to zoning." Acierno v. New Castle County, 2000 U.S. Dist. LEXIS 7853, No. 92-385, 2000 WL 718346, at *6 (D. Del. May 23, 2000)(citing Cleburne, 473 U.S. at 440). Lower Gwynedd Township should be afforded the same latitude in enacting its zoning regulations. The ZHB properly followed the ordinance and denied Plaintiff's application.

IV.   CONCLUSION

Defendants, Lower Gwynedd Township, Lower Gwynedd Township Zoning Hearing Board, Francis Vitetta, Cary Levinson and Dennis Daly respectfully suggest that Plaintiff's Complaint is legally deficient because it fails to state a cause of action for which relief can be granted, on all five Counts.  Therefore, the Complaint should be dismissed with prejudice.

Respectfully submitted,

DEASEY, MAHONEY, VALENTINI & NORTH, LTD.


BY:   HM1224
　　　 HARRY G. MAHONEY, ESQUIRE
　　　 Attorney I.D. No. 19609
　　　 1601 Market Street
　　　 Suite 3400
　　　 Philadelphia, PA  19103
　　　 Telephone: (215) 587-9400
　　　 Fax: (215) 587-9456
　　　 245.24053

　　　 Attorneys for Defendants: Lower Gwynedd Township, Lower Gwynedd Township Zoning Hearing Board, Francis Vitetta, Cary Levinson and Dennis Daly

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NHS HUMAN SERVICES, INC.       :
                                        :      Civil Action No. 11-2074
           v.                    :
                                          :
LOWER GWYNEDD TOWNSHIP,     :
LOWER GWYNEDD TOWNSHIP      :
ZONING HEARING BOARD,        :
FRANCIS VITETTA,               :
CARY LEVINSON, and             :
DENNIS DALY                    :

## CERTIFICATE OF SERVICE

I, HARRY G. MAHONEY, ESQUIRE, hereby certify that Defendants' Motion to

Dismiss Complaint Pursuant to F.R.C.P. 12(b)(6) and/or Motion for Summary Judgment

Pursuant to F.R.C.P. 56(b) was filed this date by means of the Court's ECF system where it was

immediately available for view by all counsel of record as follows:

> Patrick G. Murphy, Esquire
> Kelley & Murphy
> 350 Sentry Parkway
> Building 640, Suite 300
> Blue Bell, PA  19422

DEASEY, MAHONEY, VALENTINI & NORTH, LTD.

Date: 6/29/11

BY: ___HM1224_____
           HARRY G. MAHONEY, ESQUIRE
           Attorney I.D. No. 19609
           1601 Market Street
           Suite 3400
           Philadelphia, PA  19103
           Telephone: (215) 587-9400
           Fax: (215) 587-9456
           245.24053

           Attorneys for Defendants: Lower Gwynedd

Township, Lower Gwynedd Township Zoning
Hearing Board, Francis Vitetta, Cary Levinson and
Dennis Daly